UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SABRINA ARCHIBALD and SADE ARCHIBALD,

        Plaintiffs,

    v.

SCOTT CREDIT UNION,

        Defendant.

Case No. 25-cv-01031-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Scott Credit Union's Motion to Dismiss (Doc. 11). Defendant asks this Court to dismiss all thirteen of Plaintiffs Sabrina Archibald and Sade Archibald's claims. Plaintiffs filed a response that addressed Defendant's arguments and contained a Motion for Sanctions (Doc. 14). Defendant filed a response to Plaintiffs' Motion for Sanctions (Doc. 20). Plaintiffs filed a Motion for Leave to File a Limited Reply (Doc. 24) that included their proposed reply (Doc. 24-1). In their proposed reply, Plaintiffs acknowledged that their motion for sanctions did not comply with Federal Rule of Civil Procedure 11 and stated that they no longer sought to enforce the motion.

**I.  BACKGROUND**

Plaintiffs allege the following facts in their Complaint (Doc. 28). On June 9, 2021, Plaintiffs entered into a retail installment sales agreement with SunCity RV to purchase a 2017 Coachmen Freelander ("Automobile"). Plaintiffs made a $4,000 cash down payment at the time of the agreement. The agreement was immediately sold and assigned by SunCity RV to Defendant. The same day, Plaintiffs applied for and entered into a loan and security agreement ("Loan Agreement") with Defendant. The Loan Agreement was signed only by Plaintiffs. Under

the Loan Agreement, Defendant paid $60,288.01—$59,763.01 to SunCity RV and $525.00 to GAP Insurance—on Plaintiffs behalf. In exchange, the Loan Agreement required Plaintiffs to pay Defendant a total of $84,055.45, due and payable in 120 monthly payments. It gave Defendant a security interest in the Automobile.

From July 24, 2021, to September 25, 2023, Plaintiffs made their monthly payments under the Loan Agreement as required. They paid a total of approximately $18,200. Then, on May 1, 2023, Plaintiffs sent Defendant a notice of claim, a durable power of attorney for both Plaintiffs, and a negotiable instrument marked "Paid in Full", demanding set-off and lien release. Defendant ignored the notice. Subsequently, on May 8, 2023, and May 15, 2023, Plaintiffs sent Defendant a notice of opportunity to cure accompanied by another negotiable instrument and a notice of default. Defendant failed to respond. Between June 2023 and November 2023, Defendant issued Plaintiffs account statements that marked the account as delinquent, stated no payment had been received, and threatened credit reporting. On December 18, 2023, Plaintiffs sent another notice of default. Defendant ignored the notice.

On February 1, 2024, and February 15, 2024, Defendant issued letters to Plaintiffs stating that it received notice that Plaintiffs had cancelled their insurance coverage as of January 16, 2024. Defendant asserted that the Loan Agreement required Plaintiffs to continue maintaining insurance coverage on the Automobile. Then, on February 29, 2024, Defendant issued a formal notice of placement of insurance that unilaterally imposed insurance coverage and associated costs on Plaintiffs. In response, on October 30, 2024, and November 21, 2024, Plaintiffs sent Defendant requests for accounting seeking documentation regarding loan funding, payments, and obligations. Defendant responded with generic billing statements.

On November 22, 2024, M. Townsend of Midwest Recovery, on behalf of Defendant, attempted to repossess the Automobile. During the attempt, Townsend was informed that Plaintiffs were not available. He disclosed Plaintiffs' debt information to a third party, attempted to locate the property behind the residence, and threatened to return with police. Plaintiffs made another request for accounting on December 2, 2024. Defendant did not respond. On December 20, 2024, Plaintiffs issued a written request seeking securitization, pooling, and ownership documentation of the Loan Agreement, and attached a final opt-out notice and fee schedule. In January 2025, Defendant furnished information about the Loan Agreement to Equifax, Experian, and TransUnion. Plaintiffs filed formal disputes with each agency. Defendant verified the tradeline as accurate. As a result, one of the plaintiffs, Sabrina Archibald, was denied credit on October 31, 2023, and November 9, 2024.

On May 22, 2025, Plaintiffs filed a complaint against Defendant in this Court. The complaint asserts thirteen claims: (1) a violation of the Truth in Lending Act; (2) a violation of the Fair Credit Reporting Act; (3) a violation of the Fair Debt Collection Practices Act; (4) unjust enrichment; (5) fraud and misrepresentation; (6) a violation of the Illinois Uniform Commercial Code; (7) invasion of privacy and unlawful debt collection; (8) breach of contract; (9) a violation of the Illinois Consumer Fraud and Deceptive Practices Act; (10) declaratory and injunctive relief; (11) lack of standing and securitization-based violations; (12) civil RICO violations; and (13) 42 U.S.C. § 1983 constitutional violations.

II.     **LEGAL STANDARD**

    A. Rule 12(b)(6) Dismissal Standard:

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all

allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is not entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

### III.   ANALYSIS

The Court starts by rejecting two of Plaintiffs arguments. First, it rejects their claim that the Loan Agreement is not valid because: (1) Defendant did not disburse funds to Plaintiffs or provide Plaintiffs with lawful title, and (2) Defendant did not sign the Loan Agreement. The Loan Agreement follows standard loan practice. The law does not require disbursement of funds or title. Instead, it requires consideration. *See Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)).

Defendant paid the full purchase price of the automobile—$59,763.01—to Sun City RV on Plaintiffs behalf. That payment is valid consideration. The fact that the Loan Agreement is not signed by Defendant does not make it invalid. The statute of frauds requires certain contracts be "evidenced by a writing signed by the party to be charged." *Uscian v. Blacconeri*, 340 N.E.2d 618, 621 (Ill. App. Ct. 1975). In other words, "the only signature made necessary by the statute is that of . . . the party against whom the contract is sought to be enforced." *Cottom v. Kennedy*, 488 N.E.2d 682, 684 (Ill. App. Ct. 1986). Since the Loan Agreement was signed by Plaintiffs, it can be enforced against them.

Second, it rejects Plaintiffs assertion that they met their obligations under the Loan Agreement. The Loan Agreement required Plaintiffs to pay a total of $84,055.45. They only paid around $18,200. Instead of continuing to make the loan payments as required, Plaintiffs attempted to tender a negotiable instrument to set-off their debt. On May 1, 2023, Plaintiffs sent a letter to the CEO of Defendant. The letter states, in part:

> I Archibald, Sabrina/Agent on behalf of SABRINA ARCHIBALD/PRINCIPAL, hereby accept and claim all titles, rights, interest, and equity owed to SABRINA ARCHIBALD/PRINCIPAL. I hereby instruct Chief Financial Officer Scott Peters to apply the Principals Balance to the Principals Account . . . and VIN . . . for complete set-off.

Plaintiffs "belief[s] that this document constituted a negotiable instrument through which [they] could discharge [their] debt is indicative of a redemptionist theory, often associated with the sovereign citizen movement." *Jackson v. U.S. Bank Nat'l Ass'n*, No. 25-CV-2125, 2025 WL 2835760, at *2 (C.D. Ill. June 9, 2025) (describing a document with identical language to the one used by Plaintiffs). *See also Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Va. 2007), *aff'd*, 282 F. App'x 260 (4th Cir. 2008) (stating that plaintiff's claim that her handwritten "Bill of Exchange is a legitimate negotiable instrument is clearly nonsense in almost

5

every detail"); *Marvin v. Cap. One*, No. 1:15-CV-1310, 2016 WL 4548382, at *4 (W.D. Mich. Aug. 16, 2016), *report and recommendation adopted*, No. 1:15-CV-1310, 2016 WL 4541997 (W.D. Mich. Aug. 31, 2016), *aff'd*, No. 16-2307, 2017 WL 4317143 (6th Cir. June 6, 2017) (rejecting plaintiff's "vapor money" theory); *Hesed-El v. Aldridge Pite, LLP*, No. 20-14782, 2021 WL 5504969, at *3 (11th Cir. Nov. 24, 2021) (dismissing FCRA and breach of contract claims because the "bill of exchange" plaintiff used to make payment to Wells Fargo is "quite plainly . . . not real money"); *White v. Regular-Ascendant Holidays*, No. 1:23-CV-04309-VMC-JCF, 2023 WL 8797513, at *3 (N.D. Ga. Oct. 25, 2023), *report and recommendation adopted sub nom. White v. AT&T*, No. 1:23-CV-04308-VMC-JCF, 2024 WL 3843018 (N.D. Ga. July 11, 2024) (dismissing FDCPA and TILA claims where plaintiff submitted loan payment invoices with handwritten amounts due and "Pay to the Bearer" or "Payable to the Bearer"). Both the Seventh Circuit and this Court have rejected sovereign citizen theories as frivolous and a waste of judicial resources. *See United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (finding sovereign citizen theory to be "completely without merit" and "patently frivolous," and rejecting it without "expending any" resources on its discussion); *Foster v. Katz*, No. 15-CV-1103-SCW, 2017 WL 5749752, at *1 (S.D. Ill. Mar. 16, 2017) ("Allegations and arguments premised upon 'sovereign citizen' theories are frivolous and wholly without merit."). Now that the Court has entirely rejected two of Plaintiffs arguments, it will evaluate each of Plaintiffs thirteen claims.

    A. <u>Count 1 – Truth in Lending Act ("TILA")</u>:

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair

credit billing and credit card practices." 15 U.S.C. § 1601(a). It provides a private right of action against "any creditor who fails to comply with any requirement imposed" by the Act. 15 U.S.C. § 1640(a). Plaintiffs allege that Defendant committed four violations of the TILA.

First, Plaintiffs allege that Defendant violated the TILA because it "failed to disclose the full finance charge, including hidden and bundled fees in violation of 15 USC §§ 1605 and 1631." Specifically, they state that Defendant "failed to properly itemize finance charges," including charges for "undisclosed insurance premiums for default or credit loss," "life, accident, or health insurance," and "other service-related fees." But Defendant was not required to disclose the insurance premiums in the finance charge. 15 U.S.C. § 1605 requires property damage and liability insurance premiums to be included in the finance charge. However, the regulations "exempt[] insurance premiums from the 'finance charge' disclosure requirement if the loan documents allow the borrower to obtain insurance from an insurer of his choice." *Dolegiewicz v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr.*, No. 17 C 4737, 2018 WL 776481, at *3 (N.D. Ill. Feb. 8, 2018) (citing 12 CFR § 226.4(d)(2)(i)). The Loan Agreement allows Plaintiffs to obtain insurance from an insurer of their choice. Therefore, the insurance premium does not have to be disclosed in the finance charge.

Second, Plaintiffs allege that "Defendant intentionally excluded [their] $4.000 cash down payment from the Total Sale Price as disclosed on the [Loan Agreement], in violation of 15 U.S.C. § 1662." But that section does not require disclosure of downpayments. Instead, it states that "[n]o advertisement to aid, promote, or assist directly or indirectly any extension of consumer credit may state . . . that a specified downpayment is required in connection with any extension of consumer credit, unless the creditor usually and customarily arranges

7

downpayments in that amount." 15 U.S.C. § 1662(2). Plaintiffs have not alleged that Defendant ran an advertisement that specified downpayment is required for an extension of consumer credit. As such, Defendant could not have violated 15 U.S.C. § 1662.

Third, Plaintiffs allege that "Defendant failed to disclose escrow requirements implied by the installment sale structure, further violating TILA's accuracy and clarity requirements." They cite to IRS Publication 537 (Installment Sales) to state that "the 'installment' structure of the agreement implied the existence of an escrow account." A publication by the IRS does not provide any insight into the requirements of the TILA. In addition, even if the publication was persuasive, it does not say, or even insinuate, that an installment structure implies the existence of an escrow account. Accordingly, the TILA does not impose an obligation on Defendant to disclose escrow requirements.

Fourth, Plaintiffs allege that "Defendant issued inconsistent and misleading disclosures concerning the due date and interest, which failed to comply with 15 U.S.C. § 1638(a)." Section 1638 requires the creditor in a consumer credit transaction to make nearly twenty different disclosures. These disclosures must be made "before consummation of the transaction," and must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 CFR § 226.17(a)–(b). To state a claim under section 1638, Plaintiffs must allege specific facts showing they did not receive a required disclosure or that the disclosures they received were not clear and conspicuous. *See Igou v. Bank of Am., N.A.*, 634 F. App'x 208, 211 (10th Cir. 2015) ("[C]ourts across the country have emphasized that plaintiffs must provide basic details to support TILA claims or those claims will be dismissed under Rule 12(b)(6)."). *See also Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 24 (D.D.C. 2012); *Isagawa v. Homestreet Bank*, 769 F.

Supp. 2d 1225, 1234 (D. Haw. 2011); *Ramos v. Funding Rush, Inc.*, No. 1:23-cv-01016-ADA-HBK, 2023 WL 5241914, at *3 (E.D. Cal. Aug. 15, 2023). Plaintiffs have not alleged that the required disclosures were missing. In fact, they are not able to make that allegation. The Loan Agreement discloses the finance charge, annual percentage rate, total of payments, and the number, amount, and due dates or period of payments scheduled to repay the total of payments. Plaintiffs also have not pointed to a specific required disclosure that they believe is misleading. Their vague allegation that Defendant made inconsistent and misleading disclosures concerning the due date and interest is not sufficient. Plaintiffs have failed to state a claim under 15 U.S.C. § 1638(a). Because Plaintiffs have not stated an actionable claim under the TILA, Count 1 will be dismissed without prejudice.

    B.  <u>Count 2 – Fair Credit Reporting Act ("FCRA"):</u>

The FCRA was adopted to ensure accuracy and fairness in credit reporting. *See* 15 U.S.C. § 1681. It allows consumers to bring private civil actions for willful or negligent violations of the Act's provisions. *See* 15 U.S.C. §§ 1681n, 1681o. Plaintiffs allege that Defendant violated 15 U.S.C. § 1681s-2(b) because it "willfully and negligently failed to delete, correct, or modify the inaccurate tradeline after dispute." 15 U.S.C. § 1681s-2(b) applies when a furnisher of information receives notice from a consumer reporting agency pursuant to section 1681i(a)(2) of a "dispute with regard to the completeness or accuracy of any information provided by" them. Once the furnisher receives the required notice, it must investigate. *Id.* If information disputed by a consumer is found to be inaccurate or incomplete, the furnisher must either: (1) "modify that item of information," (2) "delete that item of information," or (3) "permanently block the reporting of that item of information." *Id.* Plaintiffs fail to state a claim under section 1681s-2(b).

Their FCRA claim is based on their allegation that Defendant inaccurately reported the loan as overdue. However, as the Court stated above, it was overdue. Therefore, the information was accurate, and Defendant had no duty to take any further action. Count 2 will be dismissed with prejudice.

    C.   <u>Count 3 – Fair Debt Collection Practices Act ("FDCPA")</u>:

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It pursues these purposes "by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019). The Act "authorizes private civil actions against debt collectors" to enforce its requirements. *Id.* (citing 15 U.S.C. § 1692k(a)). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition specifically excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. 1692a(6)(F). *See also Raven Sec., Inc. v. City of E. St. Louis*, No. 3:13-CV-639-DRH-PMF, 2014 WL 2976612, at *2–3 (S.D. Ill. July 2, 2014). Plaintiffs took out the automobile loan on June 9, 2021, and Defendant began servicing it shortly after. From July 24, 2021, to September 25, 2023, Plaintiffs made payments to Defendant under

the Loan Agreement. Since the loan was not in default when Defendant began servicing it, Defendant is not a debt collector under the FDCPA. As such, Count 3 will be dismissed with prejudice.

    D.   <u>Count 4 – Unjust Enrichment:</u>

In Illinois, "[u]njust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (quoting *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014)). Plaintiffs attempt to allege two fraud claims: Count 5 and Count 9. But as discussed below, both claims fail. And "[w]hen an underlying claim of fraud . . . is deficient, a claim for unjust enrichment should also be dismissed." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009). In addition, Plaintiffs cannot state a claim of unjust enrichment based on an implied contract because an actual contract—the Loan Agreement—governed the relationship between Plaintiffs and Defendant. As such, Plaintiffs fail to state a claim for unjust enrichment. Count 4 will be dismissed without prejudice.

    E.   <u>Count 5 – Fraud and Misrepresentation:</u>

To establish a claim of common law fraud, Plaintiffs must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). Plaintiffs claim that Defendant committed

common law fraud because it "falsely represented to Plaintiffs that a loan had been funded and that they were obligated to repay it, despite no funds being disbursed and no title to the property being delivered." As the Court established above, the Loan Agreement was valid, and Plaintiffs were obligated to repay it. Therefore, Plaintiffs have not alleged a false statement of material fact. Count 5 will be dismissed without prejudice.

    F.   Count 6 – Illinois Uniform Commercial Code ("Illinois UCC"):

Plaintiffs claim under the Illinois UCC relates to their attempt to tender "an indorsed negotiable instrument along with Notices of Claim, Default and Opportunity to Cure." They allege that "Defendant failed to respond, dishonored the instrument, and violated its obligation to provide an accounting and confirm obligations." As discussed above, Plaintiffs attempt to set off the debt by tendering a negotiable instrument is invalid. It is based on a meritless sovereign citizen theory that has been rejected across the country. Therefore, Plaintiffs fail to state an actionable claim under the Illinois UCC. Count 6 will be dismissed without prejudice.

    G.   Count 7 – Invasion of Privacy and Unlawful Debt Collection:

Plaintiffs allege that Defendant committed an invasion of privacy and unlawful debt collection because Defendant's agent, M. Townsend of Midwest Recovery, attempted to repossess Plaintiffs' property without legal notice or authorization. Illinois law permits a secured party to take possession of the collateral after default. 810 ILCS 5/9-609(a). It allows them to proceed in two ways: "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b). Here, Plaintiffs were in default on the Loan Agreement. Therefore, Defendant was entitled to repossess the collateral without judicial process if it was accomplished without a breach of the peace. Plaintiffs do not allege a

breach of the peace.

To the extent the Plaintiffs allege a claim of intrusion upon seclusion based on Townsend's disclosure of financial information to third parties, the Court finds that Plaintiffs cannot state a claim. Intrusion upon seclusion is a tort claim. *See Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). In general, "a person injured by the tortious action of another must seek his or her remedy from the person who caused the injury." *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 427 (Ill. 2012). The exception is that "[u]nder the doctrine of *respondeat superior*, a principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury, even if the principal does not himself engage in any conduct in relation to the plaintiff." *Woods v. Cole*, 693 N.E.2d 333, 336 (Ill. 1998). Plaintiffs fail to state facts establishing *respondeat superior* applies. Therefore, Plaintiffs cannot allege that Defendant is liable for Townsend's actions. Count 7 will be dismissed without prejudice.

H.  <u>Count 8 – Breach of Contract</u>:

For Plaintiffs to recover for breach of contract, they must establish four elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena*, 847 at 109 (citing *Steinberg*, 371 N.E.2d at 639). Plaintiffs allege that Defendant breached the Loan Agreement because "Plaintiffs performed all contractual obligations . . . in good faith" and "Defendant materially breached the contract by failing to disburse funds, transfer title to the property, or provide lawful consideration." In other words, Plaintiffs are claiming that Defendant

13

breached the Loan Agreement because there was no consideration. But if there was no consideration, then there was not a valid contract, and Plaintiffs cannot establish a claim for breach of contract. In addition, the Court rejects Plaintiffs assertion that they performed all their contractual obligations. As explained above, Plaintiffs failed to pay back the loan as required. Count 8 will be dismissed with prejudice.

    I.   <u>Count 9 – Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"):</u>

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To plead a private cause of action under the ICFA, Plaintiffs must allege five elements:

> (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception.

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908–09 (N.D. Ill. 2012); *accord Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). *See also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). The requirement of "actual damage" means Plaintiffs must have suffered "actual pecuniary loss." *Haywood*, 997 F.3d at 333.

Plaintiffs allege that Defendant violated the ICFA by: (1) "[m]isrepresenting the nature of the transaction by claiming a loan was disbursed [when] no funds were ever transferred to Plaintiffs," (2) "[a]ccepting payment without fulfilling the loan agreement," (3) "[f]alsely implying ownership or authority over the property, despite merely purchasing the retail installment sales agreement, not the property," (4) "[f]ailing to disclose material terms related to

financing, escrow, and title transfer," and (5) "[e]ngaging in deceptive credit reporting and threatening (by attempting) repossession without legal authority or compliance with state-required notices." The Court finds that none of these acts by Defendant were unfair or deceptive. The Loan Agreement was valid and there was no escrow requirement. At the time of the attempted repossession, the Loan Agreement was in default and Defendant had the right to self-help repossession of the property if it did so without a breach of the peace. Defendant did not engage in deceptive credit reporting because it accurately reported that the loan was overdue. Since Plaintiffs own factual allegations show that Defendant did engage in a deceptive or unfair act, they cannot state a claim under the ICFA. Count 9 will be dismissed without prejudice.

    J.   Count 10 – Declaratory and Injunctive Relief:

Count 10 appears to be simply a request for an additional form of relief for Plaintiffs other claims. It is not, in and of itself, an independent claim. *See In re Brinson*, 485 B.R. 890, 904 (Bankr. N.D. Ill. 2013) ("A declaratory judgment is a remedy for an underlying cause of action, not a separate, substantive claim for relief."); *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp. 3d 744, 752 (N.D. Ind. 2022) ("Injunctive relief is a remedy, not a claim."). The Court will dismiss these allegations as a separate claim and treat it as a prayer for declaratory and injunctive relief as to Plaintiffs other claims.

    K.   Count 11 – Lack of Standing and Securitization-Based Violations:

Plaintiffs' claims in Count 11 fit into two categories. First, Plaintiffs claim that Defendant committed securitization-based violations. They allege, based on information and belief, that the Loan Agreement "was securitized, transferred, pooled, or sold into an asset-backed investment vehicle, trust, or similar structured financial instrument without disclosure to Plaintiffs." They

15

cite to numerous different authorities—including the Code of Federal Regulations and the Illinois Compiled Statutes—to claim that this disclosure was required. However, the Court has conducted a thorough review of the authorities cited by Plaintiffs and finds that none of them require Defendant to disclose the entities involved in the securitization process to Plaintiffs. Second, Plaintiffs allege that "Defendant no longer possesses standing to enforce the alleged debt because it was securitized." To support their claim, they cite to three provisions of the Illinois UCC. The Court rejects Plaintiffs argument. Many federal courts have held that securitization of a debt does not preclude a creditor from enforcing its interest. *See Cox v. CA Holding Inc.*, No. 1:13-CV-01754-JMS, 2015 WL 631393, at *14 (S.D. Ind. Feb. 13, 2015); *Tostado v. Citibank (S. Dakota), N.A.*, No. SA-09-CV549XR, 2010 WL 55976, at *2–3 (W.D. Tex. Jan. 4, 2010); *Lane v. Vitek Real Est. Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010). Those cases, combined with the speculative nature of Plaintiffs securitization theory and their failure to provide any case law that reaches the opposite conclusion, leads the Court to conclude that Plaintiffs have failed to state a claim. Count 11 will be dismissed without prejudice.

    L.   <u>Count 12 – Civil RICO Violations:</u>

The purpose of RICO is "to eradicate organized, long-term criminal activity." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). "Congress chose to supplement criminal enforcement of [RICO] with a civil cause of action for persons whose business or property has been injured by such criminal activity." *Id.* (citing 18 U.S.C. § 1964(c)). A RICO violation requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). For Plaintiffs to state a RICO claim, they must identify an "enterprise." *United Food & Com.*

*Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). "Enterprise" is broadly defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The statute also requires Plaintiffs to identify a "person," distinct from the enterprise, that "conducted or participated in the conduct of the '*enterprise's* affairs.'" *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Plaintiffs have failed to allege an enterprise or a person distinct from the enterprise that participated in the enterprise's affairs. Even if the Court accepts Plaintiffs argument in their reply brief that Defendant is the enterprise, Plaintiffs fail to allege that any other person, such as Midwest Recovery, TransUnion, Equifax, or Experian, participated in the operation or management of Defendant.

In addition, RICO requires Plaintiffs to establish a pattern of racketeering. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778–79 (7th Cir. 1994). "A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period." *Id.* at 779. Predicate acts are listed in 18 U.S.C. § 1961(1)(B). Plaintiffs allege that Defendant engaged in three predicate activities—mail fraud, wire fraud, and bank fraud. Federal Rule of Civil Procedure 9(b) "requires that a plaintiff plead 'all averments of fraud [with] particularity,' and this rule is . . . applicable to allegations of fraud in a civil RICO complaint." *Midwest Grinding Co.*, 976 F.2d at 1020. "At a minimum, this requires Plaintiff[s] to show: (1) a scheme to defraud; (2) the intent to defraud; and (3) the use of the mails or wire communications in furtherance of the scheme to defraud." *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1098–99 (N.D. Ill. 2016). They must "state the time, place, and content of the alleged communications perpetrating the fraud, the method by which the misrepresentations were

communicated, and the identities of the parties to those misrepresentations." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 684 (N.D. Ill. 2012). Here, Plaintiffs allege that Defendant committed mail fraud by "[s]ending bills, delinquency notices, and communications concerning forced-placed insurance via U.S. Mail." In addition, they allege that Defendant committed wire fraud by sending "[e]lectronic transmissions misrepresenting the nature and enforceability of the debt." In their factual allegations, Plaintiffs detail specific communications Defendant send to them that they believe constituted mail fraud and wire fraud. However, Plaintiffs do not allege, and are unable to show, that the communications perpetrated a scheme to defraud. As discussed above, the Loan Agreement between Defendant and Plaintiffs was valid, and Plaintiffs did not fulfill their obligations under the agreement. Therefore, Defendant's attempt to collect the money owed to them or otherwise enforce the Loan Agreement does not constitute a scheme to defraud. Count 12 will be dismissed without prejudice.

    M.  Count 13 – 42 U.S.C. § 1983 Constitutional Violations:

Plaintiffs allege that Defendant violated 42 U.S.C. § 1983 because it "initiated repossession of Plaintiffs' property through Midwest Recovery, a third-party recovery agent," and upon Plaintiffs' "information and belief, the repossession was performed and attempted with the aid, presence, or cooperation of local or state law enforcement personnel and was executed without judicial authorization, court order, or any notice of default or right to cure." To state a 42 U.S.C. § 1983 claim, Plaintiffs must allege that Defendant deprived Plaintiffs of rights secured by the Constitution or laws of the United States and that Defendant was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006). Defendant is a private corporation, so it is not a state actor. "A private

party may be found to act under the color of law if he has a 'meeting of the minds and thus reached an understanding with a state actor to deny plaintiffs a constitutional right.'" *Brown v. Hasemyer*, No. 22-CV-01384-SPM, 2023 WL 5431779, at *7 (S.D. Ill. Aug. 23, 2023) (quoting *Wilson v. Warren Cty.*, 830 F.3d 464, 468 (7th Cir. 2016)). In other words, "[t]he private party and the state actor 'must share a common unconstitutional goal.'" *Id.* (quoting *Wilson*, 830 F.3d at 468). Plaintiffs have not sufficiently alleged that Defendant reached an understanding or shared a common goal with any state actor. Despite their allegation that the "repossession was performed . . . with the aid, presence, or cooperation of local or state law enforcement personnel," the factual allegations in the complaint are that the repossessor "threatened to return with the police." Since Plaintiffs factual allegations do not support their claim of state action, Defendant cannot be liable under Section 1983. Count 13 will be dismissed with prejudice.

IV. **CONCLUSION**

The Court finds that all thirteen of Plaintiffs' claims fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). Therefore, it GRANTS Defendant Scott Credit Union's Motion to Dismiss (Doc. 11) as to all of Plaintiffs' claims. Counts 1, 4, 5, 6, 7, 9, 11, and 12 are dismissed without prejudice. Plaintiffs shall have up to and including December 17, 2025, to file an amended complaint setting forth sufficient facts to state a claim with respect to these counts. Counts 2, 3, 8, 10, and 13 are dismissed with prejudice. The Clerk of Court is DIRECTED to enter judgment accordingly at the close of the case. The Court DENIES Plaintiffs' Motion for Sanctions (Doc. 14) because it fails to comply with Federal Rule of Civil Procedure 11 and Plaintiffs stated they no longer seek to enforce the motion. It DENIES Plaintiffs' Motion for Leave to File a Limited Reply (Doc. 24) as moot because Plaintiffs do not need to seek leave to

19

file a reply. *See* SDIL-LR 7.1.

**IT IS SO ORDERED.**
**DATED**:   **November 17, 2025**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **United States District Judge**