UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SABRINA ARCHIBALD and SADE
ARCHIBALD,

        Plaintiffs,

      v.

SCOTT CREDIT UNION,

        Defendant.

Case No. 25-cv-01031-JPG

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Scott Credit Union's Motion to Dismiss (Doc. 50). Defendant asks the Court to dismiss the entirety of Plaintiffs Sabrina and Sade Archibald's amended complaint for failure to state a claim. Plaintiffs filed a response (Doc. 52).

I.     **BACKGROUND**

This action arises from Plaintiffs purchase of a 2017 Coachman Freelander ("the Automobile") from SunCity RV ("SunCity"). Plaintiffs purchased the Automobile on June 9, 2021. At the time of purchase, Plaintiffs paid a $4,000 downpayment and executed a Vehicle Buyers Order. SunCity then assigned the Vehicle Buyers Order to Defendant. On June 10, 2021, Plaintiffs entered into a Loan and Service Agreement ("the Loan Agreement") with Defendant. Under the Loan Agreement, Defendant paid a total of $60,288.01—$59,763.01 to SunCity and $525 for GAP Insurance—on Plaintiffs behalf. In exchange, the Loan Agreement required Plaintiffs to pay Defendant a total of $84,055.45 and gave Defendant a security interest in the Automobile.

From July 24, 2021, to September 25, 2023, Plaintiffs paid on the Loan Agreement as required. Then, in May 2023, Plaintiffs sent three letters to Defendant instructing its Chief

Financial Officer "to apply the Principals Balance to the Principals Account . . . for complete set-off." Defendant did not respond. Plaintiffs believed that these letters discharged the debt. However, Defendant continued trying to enforce the Loan Agreement. It sent letters and emails to Plaintiffs asserting that no payments had been received, reported the loan as delinquent to credit reporting agencies, imposed force-placed insurance on the Automobile, and attempted to repossess the collateral. In response, Plaintiffs sent Defendant letters requesting full disclosures and accounting. They also asked Defendant to report the debt as paid in full to the credit reporting agencies. Defendant did not respond to these letters, other than providing generic monthly statements that did not address the requests. Plaintiffs then submitted formal disputes with each credit reporting agency and filed complaints with the National Credit Union Administration and the Illinois Department of Professional Regulation. Defendant denied any wrongdoing.

Plaintiffs filed their initial thirteen-count complaint on May 22, 2025. On June 12, 2025, Defendant filed a motion to dismiss the entirety of the complaint for failure to state a claim. On November 17, 2025, the Court granted the motion. It dismissed Counts 2, 3, 8, 10, and 13 with prejudice, and Counts 1, 4, 5, 6, 7, 9, 11, and 12 without prejudice. It gave Plaintiffs up to and including December 17, 2025, to file an amended complaint. Plaintiffs filed their amended complaint on December 5, 2025. They assert eight claims against Defendant: (1) a violation of the Truth in Lending Act; (2) a violation of the Fair Credit Reporting Act; (3) a violation of the Illinois Consumer Fraud and Deceptive Practices Act; (4) unjust enrichment; (5) intrusion upon seclusion; (6) breach of contract; and (7) wrongful repossession/wrongful attempted repossession; and (8) declaratory and injunctive relief.

## II.   LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

In considering a motion to dismiss under Rule 12(b)(6), the Court can consider documents attached to the complaint. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in

3

the complaint." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004); *see also Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

## III.    ANALYSIS

### A.  Count 1 – Truth in Lending Act ("TILA"):

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). It provides a private right of action against "any creditor who fails to comply with any requirement imposed" by the Act. 15 U.S.C. § 1640(a). Plaintiffs allege that Defendant failed to comply with various requirements of the TILA, including: 15 U.S.C. §§ 1641(f)(2), 1605(c)–(d), 1638(a) and 12 C.F.R. § 1026.18(b), (c), (j).

First, Plaintiffs allege that Defendant violated 15 U.S.C. § 1641(f)(2) by refusing to identify the current owner or master servicer of the obligation, despite receiving their written requests and failing to provide any documentation showing its authority to collect, impose charges, or furnish information about the account. Section 1641(f)(2) requires that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." Plaintiffs allege that they sent multiple written requests to Defendant requesting identification of the owner or master servicer of the obligation, all the requests were sent by certified mail and delivered to Defendant, and Defendant failed to respond

4

to the requests.[1] These facts, taken as true, are sufficient to plausibly allege a failure to comply with § 1641(f)(2).

Second, Plaintiffs allege that Defendant failed to comply with 15 U.S.C. § 1605(c)–(d) and Regulation Z by imposing force-placed insurance without providing required documentation, itemized premium details, or explanatory disclosures. Section 1605 explains how to calculate a finance charge. Paragraph (c) requires that charges or premiums for property damage or liability insurance, written in connection with the consumer credit transaction, be included in the finance charge. *See* 15 U.S.C. § 1605(c). Plaintiffs fail to allege a violation of paragraph (c) for two reasons. First, it does not require a creditor to make any disclosures. Second, even if it did require disclosures, it only applies to insurance that is written in connection with the Loan Agreement. The Loan Agreement was signed on June 10, 2021. The force-placed insurance was imposed by Defendant on February 29, 2024, with an effective date of January 16, 2024. In other words, the policy was not written in connection with the Loan Agreement. The other provision cited, paragraph (d), explains the items a creditor may exempt in computing the finance charge. *See* 15 U.S.C. § 1605(d). It does not require any documentation, itemized premium details, or explanatory disclosures. And as far as the Court can tell, no other provision of the TILA required such disclosures. Therefore, Plaintiffs fail to state a claim under § 1605(c)–(d).

Third, Plaintiffs believe that Defendant failed to comply with 15 U.S.C. § 1638(a) by issuing account statements and communications containing inconsistent, confusing, and contradictory information regarding the alleged balance, due dates, payments, and charges.

---

[1] The Court notes that many of the letters that Plaintiffs sent to Defendant did not request identification of the owner or master servicer of the account. However, the letter that Plaintiffs attached as Exhibit 22 is enough for the Court to allow this claim to proceed.

Section 1638 requires the creditor in a consumer credit transaction to make nearly twenty different disclosures. These disclosures must be made "before consummation of the transaction," and must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)–(b). Here, Plaintiffs fail to state a claim under § 1638(a) because the account statements and communications were sent after the consummation of the transaction. The Loan Agreement was signed on June 10, 2021. The account statements and communications that Plaintiffs allege fail to comply with § 1638(a) were issued between June 2023 and February 2025. Accordingly, Plaintiffs fail to state a claim under § 1638(a).

Fourth, Plaintiffs contend that Defendant failed to comply with 12 C.F.R. § 1026.18(b), (c), (j) by failing to properly disclose their downpayment within the required TILA disclosures, including failing to reflect it accurately in the "Total Sales Price" and failing to clearly itemize how the downpayment was applied. Section 1026.18 requires that a creditor make certain disclosures to the debtor. The Court finds that Plaintiffs fail to state a claim under paragraphs (b) and (c). Paragraph (b) requires disclosure of the amount financed using that term, and a brief description of the credit provided to the debtor or on the debtor's behalf. 12 C.F.R. § 1026.18(b). The Loan Agreement contains both required disclosures. It states that the amount financed is $60,288.01 and defines the term as "[t]he amount of credit provided to You or on Your behalf." Paragraph (c) requires a separate written itemization of the amount financed, including: (1) the amount of any proceeds distributed directly to the debtor; (2) the amount credited to the debtor's account with the creditor; (3) any amounts paid by the creditor on the debtor's behalf; and (4) the prepaid finance charge. 12 C.F.R. § 1026.18(c). The Loan Agreement contains the required itemization. It states that the amount given to Plaintiffs directly is $0, the amount paid to

Plaintiffs' account is $0, the amount paid to others on Plaintiffs behalf is $60,288.01 (broken down further to state that Defendant paid $59,763.01 to SunCity and $575 for GAP Insurance), and the prepaid finance charge is $0.

However, it finds that Plaintiffs have stated a claim under paragraph (j). Paragraph (j) requires a creditor to disclose "the total sale price, using that term, and a descriptive explanation (including the amount of any downpayment) such as 'the total price of your purchase on credit, including your downpayment of $__.'" 12 C.F.R. § 1026.18(j). The Loan Agreement contains a section labeled "Total Sales Price" with the required description, but it states that the total cost of Plaintiffs' purchase on credit is $0, which includes their downpayment of $0. That is not an adequate disclosure of the "Total Sales Price." Plaintiffs allege that they paid a downpayment of $4,000, and that amount is not listed. As such, Plaintiffs have plausibly alleged that Defendant failed to comply with paragraph (j). Since Plaintiffs have plausibly alleged that Defendant failed to comply with 15 U.S.C. § 1641(f)(2) and 12 C.F.R. § 1026.18(j), they have pleaded sufficient facts to state a claim under 15 U.S.C. § 1640(a). The Court will allow this claim to proceed.

B.  Count 2 – Fair Credit Reporting Act ("FCRA"):

The Court dismissed Plaintiffs' claim under the FCRA with prejudice in its Memorandum and Order dated November 17, 2025. Accordingly, this claim is improperly included in the amended complaint and is dismissed with prejudice.

C.  Count 3 – Illinois Consumer Fraud and Deceptive Practices Act:

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill.

2002). To plead a private cause of action under the ICFA, Plaintiffs must allege five elements:

> (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception.

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908–09 (N.D. Ill. 2012); *accord Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). *See also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). The requirement of "actual damage" means Plaintiffs must have suffered "actual pecuniary loss." *Haywood*, 887 F.3d at 333.

As stated above, the ICFA prohibits both unfair and deceptive acts or practices. Whether conduct is an unfair practice is determined on a case-by-case basis. *See Scott v. Ass'n for Childbirth at Home, Int'l.*, 430 N.E.2d 1012, 1018 (Ill. 1981). Three factors are relevant to the inquiry: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). Conduct is deceptive if it "creates the likelihood of deception or has the capacity to deceive." *People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991). Allegations of unfair conduct are subject to Rule 8(a)'s general pleading standard, while allegations of deceptive acts are subject to Rule 9(b)'s heightened pleading standard. *See Benson v. Fannie May Confections Brand, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

The Court starts by addressing Defendant's argument that the ICFA is intended to reach practices that affect consumers generally and is not available as a remedy for a purely private dispute between parties to a contract. For many years, there was a split in the case law on

whether the ICFA "could be used to address a purely private wrong," or whether it "required proof of public injury or an effect on consumers generally." *A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 938 (7th Cir. 1991). The Illinois legislature responded to this uncertainty by enacting an amendment that became effective January 1, 1990. *Id.* at 939. That amendment added that "[p]roof of a public injury, a pattern, or an effect on consumers generally should not be required." *Id.* There is a limited exception for plaintiffs that attempt to state a cause of action "against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code or who is the holder of a retail installment contract within the meaning of Section 2.12 of the Motor Vehicle Retail Installment Sales Act." 815 ILCS 505/10a(a). Defendant does not contend that it meets either of these definitions, and it is not apparent from the face of the complaint that it does. Accordingly, at this stage, the Court will not apply the public injury requirement and will address whether Defendant committed any acts that violated the ICFA.

Plaintiffs allege that Defendant engaged in numerous unfair or deceptive acts. First, they allege that it issued deceptive or misleading account communications by: (1) sending them inconsistent, contradictory, and misleading account statements; (2) failing to clearly disclose how their downpayment was applied; and (3) failing to respond to their written disputes, validate the alleged debt, or provide material information necessary to verify charges. They argue that these acts materially misled them regarding the status of their account and the actual cost of credit. The Court finds that none of these acts constitute deceptive practices under the ICFA. Plaintiffs' argument that the account statements were misleading is based on their mistaken belief that the letters they sent to Defendant directing the CFO to "set-off" the account actually

discharged the obligation. This belief is based on a meritless sovereign citizen theory. *See e.g., Jackson v. U.S. Bank Nat'l Ass'n*, No. 25-CV-2125, 2025 WL 2835760, at *2 (C.D. Ill. June 9, 2025). In other words, a reasonable consumer would not have been misled regarding the status of the account. Further, Plaintiffs were given plenty of disclosures to understand the actual cost of credit. The Vehicle Buyers Order included the downpayment, and informed Plaintiffs of the exact cost of the vehicle. The Loan Agreement told them the total finance charge and the cost of their monthly payments. These disclosures were sufficient to inform a reasonable consumer of the cost of the transaction. As such, these acts do not constitute deceptive practices under the ICFA.

Second, they allege that it made misrepresentations concerning insurance requirements by sending insurance notices asserting that Plaintiffs' coverage had lapsed and that additional insurance charges would be imposed that omitted material information necessary for consumers to understand the basis of the alleged lapse, failed to address Plaintiffs' ongoing written disputes, and provided no accounting or verification supporting Defendant's assertions. They believe that these communications misrepresented the actual terms of the Loan Agreement and were likely to mislead reasonable consumers regarding their contractual obligations. The Court finds that the Loan Agreement and Defendant's correspondence to Plaintiffs "conclusively defeat any claim of fraud, false promise, concealment, or misrepresentation." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 609 (7th Cir. 2013). The Loan Agreement states:

> If You do not pay the taxes or fees on the Property when due or keep it insured, We may pay these obligations, but We are not required to do so. Any amount of money We spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and You will pay interest on those amounts at the same rate You agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor Our

> loans for the purpose of determining whether You and other borrowers have complied with the insurance requirements of Our loan agreements and may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to Us and (2) the cost of determining compliance with the insurance requirements. If We add amounts for taxes, fees, or insurance to the unpaid balance of the Loan, We may increase Your payments to pay the amount added within the term of the insurance or term of the Loan. . . .

> If You do not purchase the required property insurance, the insurance We may purchase and charge You for will cover only Our interest in the Property. The premium for this insurance may be higher because the insurance company may have given Us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

Thus, from the beginning, Defendant warned Plaintiffs that if they failed to maintain property insurance on the Automobile, it would purchase insurance and charge them for it. In addition, they were warned that the premium for insurance purchased by Defendant may be higher than the rate at which they could purchase their own insurance.

All of Defendant's subsequent communications with Plaintiffs did not depart from the initial warnings. Defendant's February 1, 2024, letter notified Plaintiffs that, if they failed to provide evidence of insurance coverage on the Automobile within 30 days, it may purchase insurance on their behalf. Its February 15, 2024, letter notified Plaintiffs that if they did not furnish evidence of insurance coverage on the Automobile, Defendant would purchase insurance coverage effective January 16, 2024, and charge the premium of $1,224.00 to Plaintiffs. It stated that the charge for the coverage would be $102.00 each month until Plaintiffs provided their own insurance. Since the transaction was clearly and fully disclosed, it is not a deceptive practice under the ICFA.

Third, Plaintiffs allege that Defendant imposed unfair and unauthorized force-placed insurance. They claim that these actions caused them unjustified financial injury. "A practice

11

causes substantial injury to consumers if it causes *significant* harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Garrett v. RentGrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, at *4 (N.D. Ill. July 1, 2005) (emphasis added). Here, there is no significant harm to Plaintiffs. The Loan Agreement required Plaintiffs to maintain insurance on the Automobile. It provided that, if they failed to do so, Defendant could purchase insurance and charge the premium to Plaintiffs. While the force-placed insurance may have been more expensive than insurance Plaintiffs could purchase on their own, the contract notified Plaintiffs of this risk. In addition, the choice of their own, less expensive insurance was always available, even after Defendant purchased the force-placed insurance. Accordingly, the force-placed insurance cannot be said to have caused Plaintiffs any substantial injury.

Fourth, they allege that Defendant engaged in unfair and deceptive repossession-related conduct because it initiated repossession activity without issuing notices required by the Loan Agreement and Illinois law, and its agent M. Townsend entered their family members' property without consent, attempted to search behind the residence, and disclosed their debt information to a third party. They contend that this conduct was oppressive. Conduct is oppressive when it leaves "the consumer with little alternative but to submit." *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996). It was not oppressive for Defendant to attempt to repossess the Automobile. Neither the Loan Agreement nor Illinois law required Defendant to issue notices prior to the repossession attempt. In fact, the Loan Agreement says just the opposite. It states: "When You are in default, We may demand immediate payment of the outstanding balance of the Loan without giving You advance notice and take possession of the Property." Further, Plaintiffs had multiple other options. First, they could have paid the past due

12

balance. Prior to the attempted repossession, Defendant sent Plaintiffs multiple letters and emails notifying them of the past due balance and asking them to pay the amount due. Second, they could have negotiated an arrangement with Defendant to repay the loan. Defendant expressly notified them of this option. Third, they could have surrendered the Automobile to Defendant. Any one of these three options would have prevented Defendant from engaging in self-help repossession.

Finally, Plaintiffs allege that Defendant engaged in deceptive and unfair credit reporting. The Court already rejected this claim in its Memorandum and Order dated November 17, 2025. In that order, the Court determined that the Loan Agreement was valid, and Plaintiffs were in default on the Loan Agreement. Defendant did not engage in a deceptive or unfair practice by accurately reporting the loan as overdue. The Court finds that Plaintiffs' own factual allegations show that Defendant did not engage in a deceptive or unfair act. Therefore, Plaintiffs have not stated a claim under the ICFA. Count 3 will be dismissed with prejudice.

D.  Count 4 – Unjust Enrichment:

In Illinois, "[u]njust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (quoting *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014)). Plaintiffs attempt to allege a fraud claim in Count 3. As the Court described above, this claim fails. And "[w]hen an underlying claim of fraud . . . is deficient, a claim for unjust enrichment should also be dismissed." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009).

13

In addition, Plaintiffs cannot state a claim of unjust enrichment based on an implied contract because an actual contract—the Loan Agreement—governed the relationship between Plaintiffs and Defendant. Plaintiffs fail to state a claim for unjust enrichment, so Count 4 will be dismissed with prejudice.

E.  Count 5 – Intrusion Upon Seclusion:

"To make out a claim for intrusion upon seclusion, a plaintiff must show that: '(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering.'" *Browning v. AT & T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009). Liability for intrusion upon seclusion "depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989). "It is the intrusion itself that creates liability, not any subsequent publication or disclosure." *Brown v. State Farm Mutual Automobile Insurance Co.*, No. 23 C 6065, 2025 WL 81340, at *8 (N.D. Ill. Jan. 13, 2025) (quoting *In re Trans Union Corp., Priv. Litig.*, 326 F. Supp. 2d 893, 901 (N.D. Ill. 2004)). "Examples of unauthorized intrusion include 'invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls.'" *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 850–51 (N.D. Ill. 2024) (quoting *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020)).

Plaintiffs allege that Defendant, through its agent M. Townsend, committed four acts that amount to intrusion upon seclusion. Intrusion upon seclusion is a tort claim. *See Busse v.*

14

*Motorola*, *Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). In general, "a person injured by the tortious action of another must seek his or her remedy from the person who caused the injury." *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 427 (Ill. 2012). The exception is that "[u]nder the doctrine of *respondeat superior*, a principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury, even if the principal does not himself engage in any conduct in relation to the plaintiff." *Woods v. Cole*, 693 N.E.2d 333, 336 (Ill. 1998). Even if the Court accepts Plaintiffs' conclusory allegation that M. Townsend was an agent of Defendant, it finds that Plaintiffs fail to state a claim. The doctrine of *respondeat superior* is "based on a transfer of liability." *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1017–18 (N.D. Ill. 2012). As such, a principal cannot be held liable under the doctrine where the agent is free of responsibility. *Id.*

Here, Plaintiffs fail to plausibly allege that any of the acts performed by M. Townsend constituted an unauthorized intrusion. Two of the acts—initiating the repossession without providing required notices and threatening to return with the police—clearly fail to state a claim for inclusion upon seclusion. These acts do not involve prying into the physical boundaries or affairs of Plaintiffs. The other two acts require more analysis. Plaintiffs first allege that during the attempted repossession, Defendant's agent entered their family member's private residential property without consent, walked along the side and rear portions of the home, and conducted a physical search for the Automobile within areas of the curtilage not open to the public. This does not constitute an unauthorized intrusion. Illinois courts "recognize that the self-help repossession statute extends a conditional self-help privilege to secured parties." *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173 (Ill. App. Ct. 1996). This privilege allows them to enter a

15

debtor's real property "for the sole and exclusive purpose of effecting the repossession." *Id.* at 1175. "So long as the entry was limited in purpose (repossession), and so long as no gates, barricades, doors, enclosures, buildings, or chains were breached or cut, no breach of the peace occurred by virtue of the entry onto [the] property." *Id.* Here, Plaintiffs allege that M. Townsend entered their family member's real property for the sole purpose of attempting to repossess the Automobile. They do not allege that M. Townsend did anything other than walk on the property. Based on these facts, M. Townsend had the privilege to enter Plaintiffs' real property, and the entry was not an unauthorized intrusion.

Plaintiffs next allege that M. Townsend disclosed their debt information to an unrelated third-party present at the residence. That is not sufficient to state a claim for intrusion upon seclusion for two reasons. First, the disclosure of private information does not give rise to liability for intrusion upon seclusion.[2] *See Brown*, 2025 WL 81340, at *8. It is the intrusion itself that creates liability. *Id.* Second, the debt information was contained in Defendant's own files. Defendant's accessing of its own lawfully obtained files cannot be considered an unauthorized intrusion. *See In re Trans Union Corp., Priv. Litig.*, 326 F. Supp. 2d at 901–02. Since Plaintiffs fail to plausibly allege that M. Townsend committed any unauthorized intrusion, Defendant cannot be held liable for his actions. Accordingly, Plaintiffs fail to state a claim for intrusion upon seclusion and Count 5 will be dismissed with prejudice.[3]

---

[2] The Court notes that the disclosure of information is covered by another privacy tort: public disclosure of private facts. However, it finds that Plaintiffs fail to state a claim. Plaintiffs state that the disclosure was only made to one person and have not pleaded facts to show that the disclosure was made to a person with whom they have a special relationship. *See Poulos v. Lutheran Soc. Servs. of Illinois, Inc.*, 728 N.E.2d 547, 555 (Ill. App. Ct. 2000) (stating the elements of a public disclosure of private facts claim); *Nazzaro v. Tecta Am. Corp.*, No. 25 C 448, 2025 WL 2604790, at *5 (N.D. Ill. Sept. 9, 2025) (explaining the publicity element of the claim).

[3] Any claim for public disclosure of private facts is dismissed without prejudice. If Plaintiffs would like to file a second amended complaint with respect to this claim, they must comply with Federal Rule of Civil Procedure 15 and Local Rule 15.1.

F.  Count 6 – Breach of Contract:

The Court dismissed Plaintiffs' claim for breach of contract with prejudice in its Memorandum and Order dated November 17, 2025. As such, this claim is improperly included in the amended complaint and is dismissed with prejudice.

G.  Count 7 – Wrongful Repossession/Wrongful Attempted Repossession:

Illinois law permits a secured creditor to take possession of the collateral after default. 810 ILCS 5/9-609(a). It allows them to proceed in two ways: "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b). As the Court found in its Memorandum and Order dated November 17, 2025, Plaintiffs were in default on the Loan Agreement. Therefore, Defendant was entitled to repossess the collateral without judicial process if it was accomplished without a breach of the peace.

Section 9-609 "does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts." Uniform Commercial Code Comment 3 to § 9-609. Illinois courts have concluded that "the term 'breach of the peace' connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." *Koontz*, 661 N.E.2d at 1173. No violent conduct is necessary. *Id.* "The probability of violence at the time of or immediately prior to the repossession is sufficient." *Id.*

Plaintiffs allege that Defendant's agent, M. Townsend, committed a beach of the peace during the attempted repossession by: (1) entering their family member's private residential property without consent and attempting to locate the collateral; (2) disclosing their debt information to an unrelated third party; and (3) threatening to return with law enforcement if the

17

collateral was not surrendered. The Court believes that these facts, taken as a whole, are sufficient to plausibly allege a breach of the peace. To begin, Section 9-609 "does not require that the repossessor actually repossess the vehicle before the statute is violated." *Williams v. Republic Recovery Serv., Inc.*, No. 09-CV-6554, 2010 WL 3732107, at *3 (N.D. Ill. Sept. 16, 2010). Further, M. Townsend's threat to return with law enforcement if Plaintiffs did not surrender the Automobile is reasonably likely to incite violence. Accordingly, it is sufficient to allege that the attempted repossession constituted a breach of the peace. Since Plaintiffs have adequately pleaded a claim for wrongful attempted repossession, the Court will allow this claim to proceed.

      H.  Count 8 – Declaratory and Injunctive Relief:

The Court dismissed Plaintiffs' claim for declaratory and injunctive relief with prejudice in its Memorandum and Order dated November 17, 2025. Therefore, this claim is improperly included in the amended complaint and is dismissed with prejudice. The Court will treat it as a prayer for declaratory and injunctive relief as to Plaintiffs' other claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant Scott Credit Union's Motion to Dismiss (Doc. 50). Counts 2, 3, 4, 5, 6, and 8 are DISMISSED with prejudice. The Clerk of Court is DIRECTED to enter judgment accordingly at the close of the case.


**IT IS SO ORDERED.**
**DATED**:  **March 13, 2026**

                                        s/ J. Phil Gilbert

**J. PHIL GILBERT**
**United States District Judge**